**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| BRIDGIT COWAN, as parent and legal guardian of A.K., a minor,<br><br>Plaintiff,<br>v.<br><br>GREAT FALLS PUBLIC SCHOOLS, and FACULTY,<br><br>Defendants. | **No. CV 25-52-GF-BMM**<br><br><br><br>**ORDER** |

Bridgit Cowan ("Cowan") filed this action on behalf of her minor child, A.G.K., on June 11, 2025, alleging several different claims against Defendants Great Falls Public Schools District No. 1 and the unnamed and unknown faculty (collectively "GFPS"). (Doc. 8, Doc. 1.) Cowan's Second Amended Complaint, filed on October 28, 2025, alleges the following five counts against Defendants: Count I, Individuals with Disabilities Education Act ("IDEA") Violation, 20 U.S.C. § 1400 et seq.; Count 2, Title IX Violation, 20 U.S.C. § 1681; Count III, Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Count IV, Violation of the Americans with Disabilities Act ("ADA"); Count V, Negligence and Failure to Supervise. (Doc. 35.) Defendants filed a motion for summary judgment on July 10,

2026. (Doc. 50.) Cowan opposes the motion. (Doc. 56.) The Court held a hearing on the matter on August 24, 2026. (Doc. 64.)

**BACKGROUND**

Cowan's daughter, A.K., was first enrolled as a kindergarten student at West Elementary School, in the Great Falls Public School system, in Montana, in August 2021. (Doc. 51 at 2.) Cowan stopped sending A.K. to West Elementary School, or any school in GFPS, in April 2025, near the end of A.K.'s third grade year. (*Id*. at 5.) GFPS has no record of any parental concerns regarding A.K. in her kindergarten (2021-2022) or first grade (2022-2023) years at West Elementary School. (*Id*. at 3.) Cowan has cognitive and memory impairments, as well as time perception issues. (Id. at 2.)

A.K. started second grade in August 2023. (*Id*.) Cowan first expressed concerns in February 2024, regarding A.K.'s interaction with another student that had happened during first grade (2023). (*Id*.) GFPS was unable to verify anything at that time. (*Id*.) Cowan requested and GFPS agreed to move A.K. to another classroom so that A.K. would have no contact with the student. (*Id*.) A.K. reported that another student had swatted A.K. on her buttocks in March 2024 (*Id*.) Mrs. Wright, who presumably was A.K.'s teacher, told A.K. that Wright needed to know anytime a student said or did something that made A.K. uncomfortable. (*Id*.) GFPS addressed the issue with the student and his parent. (*Id*.) Mrs. Wright caught students

passing a hand-drawn sticky note with a drawing of what second graders considered to be a "butt" (essentially a circle with a line drawn through it) on April 10, 2024. (*Id*.) Several students were involved/accused but no one admitted to the drawing. (*Id*.) Mrs. Wright instructed all involved that it was inappropriate and had to stop. (*Id*.) That was the end of the incident. (*Id*.) Cowan also claims there was an incident in kindergarten, of which GFPS has no record or documentation. (*Id*. n.1.) None of Cowan's complaints in this case or her Preliminary Pretrial Statement (Doc. 24) provide any detail of the alleged incident. (*Id*.) Cowan testified at her deposition there was a single comment, but she does not know exactly what was said. (*Id*., citing Cowan Depo at 56.)

Cowan asked on April 25, 2024, that A.K. not be called upon to read in front of the class. (*Id*. at 4.) GFPS agreed and A.K. was not called on the read in front of the class again. (Id.) Cowan withdrew A.K. from school on April 29, 2024. (*Id*.) West Elementary Principal, Lindsey Stulc and the School Psychologist met with Cowan in May 2024, to secure a special education evaluation for A.K. (*Id*.) GFPS explained that A.K. had to be enrolled for purposes of evaluation. (*Id*.)

The Individual Education Program ("IEP") team met with Cowan in June 2024 to discuss special education services and accommodations and Cowan signed an IEP on June 19, 2024. (*Id*.) The first IEP in effect for A.K. at GFPS is dated June

19, 2024. (*Id.*) IEP services were implemented and made available to A.K. from that point forward. (*Id.*) A.K. had an active IEP for her third-grade year. (*Id.*)

A.K. began third grade in Fall 2024. (*Id.*) The first semester went without incident or reported concerns from Cowan. (*Id.*) Cowan complained on April 8, 2025, that A.K. was subjected to students on a bus moaning "sexually." (*Id.*) This allegation does not appear in Cowan's Second Amended Complaint (Doc. 35.) but there is an allegation of sexual moaning in the hallways in Cowan's first complaint (Doc. 1). This incident happened on a bus dedicated to transportation of special education/special needs students, some of whom have cognitive difficulties. (*Id.*) GFPS investigated the incident. (*Id.*) The bus was not the bus assigned to A.K.'s address. (*Id.*) GFPS addressed the issue with the student and his parent. (*Id.* at 4-5.) GFPS thereafter ensured that A.K. would ride her assigned regular education bus from that point forward. (*Id.* at 5.)

GFPS offered to initiate the Title IX process on April 14, 2025, and asked Cowan to set up a Title IX interview. (*Id.*) GFSP Executive Director Lance Boyd called Cowan to offer a Title IX investigation on April 15, 2025. (*Id.*) Cowan declined. (*Id.*) Cowan did not initiate or pursue a Title IX complaint. (*Id.*) GFPS also attempted to offer A.K. bus transportation to another elementary school within GFPS so that she did not have to attend West Elementary. (*Id.*) Cowan stopped sending

A.K. to school in April 2025. (*Id.*) A.K. has not attended school in GFPS since April 2025. (*Id.*)

An IEP must be updated on an annual basis. (*Id.*) GFPS attempted to schedule meetings with Cowan for a new IEP in May 2025. (*Id.*) Cowan refused to meet. (*Id.*) Cowan has not initiated the administrative process required by IDEA and did not request a special education due process hearing pursuant to IDEA. (*Id.*)

School attendance has been a significant problem for A.K. since beginning school. (*Id.* at 2.) Of a total of 177 total school days, A.K. missed thirty-five (35) days or almost 20% of school in first grade (2022-2023). (*Id.*) A.K. missed 48 days or almost 30% of school in second grade (2023-2024). (*Id.*) A.K. missed 67 days or almost 40% of school in third grade (2024-2025). (*Id.*)

Cowan filed her original complaint against Defendants on June 11, 2025, in Montana state district court. (Doc. 8.) Defendants removed Cowan's case to federal court on July 2, 2025. (Doc. 1.) Cowan has filed several pro se motions since that time. (*See* Doc. 15, Doc. 16, Doc. 17, Doc. 18, Doc. 25, and Doc. 37.) The parties had a settlement conference before U.S. Magistrate Judge John Johnstone where Cowan was represented by counsel. (Doc. 41.) The parties failed to settle. (Doc. 45.) Defendants filed a motion for summary judgment on July 10, 2026. (Doc. 50.) Cowan filed a motion for leave to submit supplemental evidence out of time for

limited extension of time, to defer ruling on summary judgment, and for related scheduling relief, on August 11, 2026. (Doc. 60.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

Cowan alleges that GFPS failed "to provide a safe and appropriate education" and to "prevent harassment, bullying and discrimination" and to "comply with its legal duties under federal statutes." (Doc. 35 Ex. 1 ¶ 2.) Cowan alleges "throughout kindergarten, second and third grade, A.K was subjected to repeated incidents of bullying and sexual harassment, both verbal and physical, by peers and in an environment that was inadequately supervised by school staff." (*Id*.) Cowan alleges she "has been forced to move her children to another town in order for them to receive a safe and appropriate education." (Doc. 35 Ex. 2.) Cowan seeks a declaration that GFPS's "conduct violated IDEA, Title IX, Section 504 and the ADA" and "corrective measures to ensure compliance and accountability," among

other requested relief. (Doc. 35 Ex. 3.) The Court will address each of Cowan's separate counts.

**I. Counts I, III, and IV: IDEA Violation, Violation of Section 504 of the Rehabilitation Act of 1973, and ADA Violation.**

Defendants argue that Cowan failed to follow the administrative process required by IDEA. (Doc. 51 at 6.) Defendants assert that Cowan "was uncooperative with GFPS'[s] attempts to schedule IEP meetings, declined to initiate a Title IX investigation, and refused all GFPS'[s] efforts to continue A.K.'s education." (*Id*.) Defendants assert that Cowan's Counts I, III, and IV must be dismissed for failure to exhaust administrative remedies. (*Id*. at 7.) The Court agrees.

"The IDEA's 'primary goal'" is "to ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) ("*Antelope Valley*") (quoting *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010)); 20 U.S.C. § 1400 (2018). A FAPE is to be uniquely tailored to the needs of a student with a disability by an IEP, which is "'the centerpiece of the [IDEA's] education delivery system.'" *See Antelope Valley*, 858 F.3d at 1194 (citations omitted); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch*

*Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

An IEP is a comprehensive education plan collaboratively developed "in compliance with a detailed set of procedures" by a student's "IEP Team," including teachers, school officials, the child's parents, and, "whenever appropriate, the child with a disability." *Endrew*, 137 S. Ct. at 994 (citation omitted); 20 U.S.C. § 1414(d)(1)(B) (2018). "An IEP must contain, among other things, 'a statement of the child's present levels of academic achievement,' 'a statement of measurable annual goals,' and 'a statement of the special education and related services . . . to be provided to the child.'" *Antelope Valley*, 858 F.3d at 1194 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)). "An IEP must also include "appropriate measurable postsecondary goals based upon age appropriate transition assessments," and "the transition services . . . needed to assist the child in reaching those goals" if the student is sixteen years old or older. *Id.*; 20 U.S.C. § 1414(d)(1)(A)(i)(VIII).

"[A] school district 'must comply both procedurally and substantively with the IDEA'" to meets its obligation to provide a student with a FAPE. *Antelope Valley*, 858 F.3d at 1194 (citations omitted). A court "must inquire first into whether the district complied with the IDEA's procedural requirements," and then, whether the district met "its substantive obligation under the IDEA" by offering "an IEP reasonably calculated to enable a child to make progress appropriate in light of the

child's circumstances," when determining whether a school district provided a FAPE. *Endrew*, 137 S. Ct. at 999.

When a dispute concerning a child's FAPE arises, IDEA requires that a party exhaust their administrative remedies. *Fry v. Napoleon Comm'ty Schools*, 580 U.S. 154, 159 (2017). Administrative exhaustion is a legal process that requires parties to undergo a series of steps before they can reach federal court. *See McKart v. United States*, 395 U.S. 185, 193-4 (1969). A party must complete, or "exhaust", the entire process. *Aircraft and Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 767 (1947). It is not enough to have begun, or even partially completed the process. *Id.* Administrative exhaustion seeks to have the parties find a way to resolve their dispute, before spending the time and resources necessary to resolve a claim in federal court. *McKart*, 395 U.S. at 195. It does not bar party from reaching federal court altogether. Instead, it is simply a condition to be satisfied before a federal court may take the case. *Aircraft and Diesel Equipment Corp.*, 331 U.S. at 764.

Different federal laws have different administrative exhaustion processes. Under IDEA, the administrative exhaustion process begins with a parent making a complaint to the relevant local or state agency. *Id.* The complaint may then trigger a "preliminary meeting" and/or a full mediation process. *Id.* If the dispute continues, the parent is entitled to a due process hearing before a hearing officer. *Id.* At the due process hearing, the hearing officer will determine whether the child received a

FAPE. *Id.* A parent dissatisfied with the determination has exhausted their administrative remedies and may *then* seek judicial review by filing a civil action in state or federal court. *Id.* (citations omitted).

The administrative exhaustion requirement proves essential, because it helps to ensure that the dispute may be resolved by the most appropriate decision-makers with the most facts available. First, it charges local educational agencies with the responsibility of establishing programs to provide FAPEs to students with disabilities. *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992). In other words, it gives them an opportunity to make corrections early. Second, the administrative exhaustion requirement ensures that the cases that reach federal court do so under the best possible circumstances. As the *Hoeft* court explained, the administrative exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* (citations omitted).

Without the administrative exhaustion requirements, federal courts could endanger both the substantive and procedural goals of IDEA. *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). Federal courts

are "generalists" with no expertise in the educational needs of children with disabilities. *Id.* Through the exhaustion requirement, claims that reach them have "the benefit of expert factfinding by a state agency devoted to this very purpose." *Id.* The exhaustion requirement also encourages parents and agencies to work together to formulate an individual plan for each child. *Id.* (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)).

Other federal statutes also apply to individuals with disabilities. Title II of the ADA and Section 504 of the Rehabilitation Act, statutes at issue in both *Fry* and the current matter, "cover both adults and children with disabilities in both public schools and other settings." *Id.* Under the ADA, a "public entity" may not discriminate based on disability, and the Rehabilitation Act applies the same prohibition to any federally funded "program or activity." 42 U.S.C. §§ 12131-12132; 29 U.S.C. § 794(a). Simply put, while the "IDEA guarantees individually tailored educational services, . . . Title II and § 504 promise non-discriminatory access to public institutions." *Fry*, 580 U.S. at 171.

IDEA includes an exhaustion requirement impacting claims brought under other laws. Pursuant to § 1415(*l*):

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also

> available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*). In other words, even when not directly asserting claims under IDEA, a plaintiff must "exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." *Fry*, 580 U.S. at 165 (quoting § 1415(*l*)).

To meet that standard, "a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* Application of the exhaustion rule thus "hinges on" whether the lawsuit seeks relief for denial of a FAPE. *Id.* at 754. To make this determination, a court looks to the substance, rather than labels used in a complaint. *Id.* at 755. "What matters is the crux – or, in legal-speak, the gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*

The gravamen of Cowan's complaint on these three counts hinges on West Elementary School's denial of a FAPE, or a free appropriate public education, including following an IEP for A.K. Cowan focuses her allegations on GFPS's failure "to provide a safe and appropriate education" and "a fair and lawful education" to A.K. (Doc. 35 Ex. 2.) Cowan's Count I states that Defendants "failed to provide a Free Appropriate Public Education (FAPE) by not ensuring that [A.K]'s

Individualized Education Program (IEP) produced 'progress appropriate in light of the child's circumstances" and "[d]espite evidence of ongoing education regression, the school failed to reevaluate or adjust the IEP, denying the student services required under federal law." (Doc. 35 ¶¶ 31-32.) Cowan's Count I hinges on relief for denial of a FAPE. Cowan's failure to exhaust administrative remedies proves fatal.

Similarly, Cowan's Count III, states that "Defendant discriminated against A. G. K. based on disability by failing to provide accommodations necessary for equal participation in educational programs and "[t]he lack of coordination between IEP staff and classroom teachers resulted in exclusion from educational benefits afforded to nondisabled peers." (*Id*. ¶¶ 35-36.) This claim suffers the same problem. *See P.H. by Luna v. Tehachapi Unified Sch. Dist.*, No. C17-0257, 2017 WL 3085020, at *4 (E.D. Cal. June 9, 2017) (complaint alleged defendants isolated plaintiff from other school children during school day, resulting in the denial of school programs and services). "The claims presented by [Cowan] here are, [] premised on equal access and not the adequacy of the special education services." *Id*. This posture demonstrates a focus on a free appropriate public education, and, therefore, IDEA's administrative exhaustion requirement properly bars Cowan's Count III.

Cowan's Count IV states that "Defendant failed to reasonably accommodate Plaintiff's disability in communications and participation, creating additional barriers to advocacy and parental involvement," and "[t]his constitutes

discrimination under Title II of the ADA and reinforces the pattern of systemic non-compliance." (Doc. 35 ¶¶ 37-38.) It remains unclear to the Court whether Cowan is referring to herself, as the parent, or to A.K. in this allegation. Cowan's allegation alleges systemic non-compliance, but does not "implicate[] the integrity or reliability of the IDEA dispute resolution procedures themselves, or require[] restructuring the education system itself in order to comply with the dictates of the [IDEA].'" *J.T. v. Dumont Pub. Schs.*, 533 Fed. App'x. 44, 54 (3d Cir. 2013) (quoting *Doe v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)).

It appears to the Court that the administrative hearing officer likely could have provided the type of relief requested by Cowan that would remedy her concerns about advocacy and parental involvement. A FAPE includes not only "'instruction' tailored to meet a child's 'unique needs,'" but also "sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry*, 137 S. Ct. at 748-49 (quoting 20 U.S.C. § 1401(26), (29)). Cowan's allegations concerning supportive services and unique needs directly relate to the alleged denial of FAPE and directly to the context of these claims within a school system.

Finally, Cowan provided supplemental evidence on September 1, 2026. (Doc. 71.) Unfortunately, the additional evidence does little more than confirm that Cowan failed to satisfy the administrative exhaustion requirement. Cowan offers grade reports that show A.K.'s struggles in school, and several requests for records from

West Elementary School. (Doc. 71-1.) This evidence demonstrates that Cowan "did not intentionally refuse an available process" and "repeatedly sought assistance, information, records, review, and accountability." (Doc. 71-2 ¶ 35.) None of the documents demonstrate Cowan's exhaustion of administrative remedies. The administrative exhaustion requirement remains essential to achieve federal judicial review. *Hoeft*, 967 F.2d at 1303. The Court agrees with Cowan that dismissal based on failure to exhaust administrative remedies fails to resolve the substance of her claims. (Doc. 56 at 4.) The Court has no discretion, however, in requiring administrative exhaustion as it remains a clear statutory mandate. Cowan's failure to exhaust the available administrative remedies requires dismissal of her claims at this time.

## II. Count II: Title IX Complaint.

Cowan's Count II alleges that "Defendant acted with deliberate indifference to reports of sexual harassment and a hostile educational environment," and "[t]he school's response—relocating the victim instead of addressing the perpetrators—constitutes discrimination on the basis of sex and a violation of Title IX." (Doc. 35 ¶¶ 33-34.) "Title IX prohibits sex discrimination by recipients of federal education funding. The statute provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal

financial assistance.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (quoting 20 U.S.C. § 1681(a)).

Two threshold requirements of any Title IX claim are that "the defendant be a recipient of '[f]ederal financial assistance' and that the plaintiff experienced sex discrimination." *Karasek v. Regents of University of California*, 956 F.3d 1093, 1105 n. 1 (9th Cir. 2020) (citing 20 U.S.C. § 1681(a)). In addition to satisfying these threshold requirements, a plaintiff alleging a Title IX claim arising from student-on-student sexual harassment must establish the following elements: (1) the school had substantial control over the harasser; (2) the plaintiff suffered harassment so severe that it deprived the plaintiff of access to educational opportunities or benefits; (3) a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment; and (4) the school acted with deliberate indifference to the harassment such that the indifference subjected the plaintiff to harassment.

*Grabowski v. Arizona Board of Regents,* 69 F.4th 1110, 1118-19 (9th Cir. 2023) (internal citations, punctuation, and quotation marks omitted); *see also Karasek*, 956 F.3d at 1105 (listing the elements of a Title IX claim for "student-on-student or faculty-on-student sexual harassment or assault").

Title IX liability for peer harassment "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's

access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). Further, to state a Title IX sex discrimination claim, a plaintiff must plausibly allege that "the school acted with deliberate indifference to the harassment such that the indifference subjected the plaintiff to harassment." *Grabowski*, 69 F.4th at 1119 (internal quotation marks and citations omitted). A school acts with deliberate indifference when its response to sexual harassment "is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "This is a fairly high standard – a 'negligent, lazy, or careless' response will not suffice." *Karasek*, 956 F.3d at 1105 (citation omitted).

The Court finds it difficult to conclude that Cowan has demonstrated sufficient evidence for a reasonable jury to return a verdict in her favor. *Anderson*, 477 U.S. at 248. Defendants do not dispute Cowan's factual allegations, but rather, their sufficiency in demonstrating that Defendants were deliberately indifferent in allowing A.K. to suffer severe, pervasive sexual harassment. Cowan argues that the kindergarten sexual comment, two second-grade students making contact with A.K.'s buttocks, the teacher's minimizing comments, and the sexual statements by the child on the bus, amount to sufficient evidence for her claim. (Doc. 56 at 6.) The Court remains skeptical that these incidents largely amount to "teasing and name-calling among school children" despite the gender differences. *Davis*, 526 U.S. at 652.

The Court hesitates to minimize offensive and inappropriate acts made by other children, but also strains to see how these incidents plausibly rise to the level of severe and pervasive, particularly considering the youth and mental capacity of the alleged perpetrators. "[C]hildren may regularly interact in a manner that would be unacceptable among adults." *Davis*, 526 U.S. at 651. Young children at school "often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it," but "[d]amages are not available for simple acts of teasing and name-calling among school children." *Id.* at 651-52. Moreover, Defendants reasonably responded within their discretion. *Id.* at 648-49. The U.S. Supreme Court stressed in *Davis* that Title IX does not require administrators to "engage in particular disciplinary action." *Id.* at 648. The Court does not intend to minimize A.K.'s experience. The allegations fail, however, to sufficiently allege conduct meeting the requirements for a Title IX claim and no material facts remain in dispute that would alter that conclusion.

## III. Count V: Negligence and Failure to Supervise.

Defendants' motion for summary judgment fails to address Cowan's Count V, claiming negligence and failure to supervise. (*See* Doc. 51.) Defendants' reply makes one reference to her "negligent supervision" as being indistinguishable from her central allegations, and, thus, requiring dismissal based on failure to exhaust IDEA administrative remedies. (Doc. 59 at 3.) Cowan argues that Defendants failed to

make particular arguments as to Count V and the overlap of facts between Count V and other claims does not "eliminate a separate claim without claim-specific legal analysis and application of the governing law to undisputed evidence." (Doc. 56 at 7.) The Court finds compelling Cowan's argument and remains confused why Defendants failed to address Cowan's Count V.

The Court must consider, however, whether IDEA's administrative exhaustion requirements strip the Court of the authority to consider Cowan's negligent supervision claim at this time. Cowan's Count V states "Defendant owed a duty of care to protect students from foreseeable harm while under school supervision," and "[b]y failing to properly supervise, document, and intervene in repeated incidents of harassment and bullying, Defendant breached that duty, directly resulting in harm to A. G. K. and her family." (Doc 35 ¶¶ 39-40.) The Court struggles to see how these allegations focus on the denial of FAPE. A FAPE comprises "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. *Fry*, 580 U.S. at 158. Cowan's negligent supervision claim focuses not on A.K.'s disability, but rather on the alleged sexual harassment incidents. See e.g., *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 922 (N.D. Iowa 2017) (considering "negligent supervision" claim "unrelated to or beyond the scope of a FAPE."); *see also Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*,

578 F. Supp. 3d 164, 179 (D. Mass. 2022) ("The [U.S.] Supreme Court teaches that the focus should be on the gravamen of the case, which is not the denial of a FAPE, but rather a sexual assault caused by negligent supervision, albeit in an educational setting.")

In other words, Cowan's negligent supervision claim is not focused on denial of FAPE, but rather her Title IX claims. The Court concludes that IDEA exhaustion does not preclude Cowan's negligent supervision claim. The Court declines to further address Cowan's Count V considering Defendants' failure to address it in their motion for summary judgment. The Court will deny summary judgment to Defendants' on Cowan's Count V.

The Court, however, may decline to exercise supplemental jurisdiction over the state-law claim that remains where it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Considering the *Carnegie-Mellon* factors, this case is best suited for adjudication in a state court. The Court will therefore dismiss Cowan's negligent supervision claim without prejudice.

Accordingly, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 50) is **GRANTED, in part,** and **DENIED, in part**. Cowan's Counts I, II, III, and IV are **DISMISSED**. The Court **DENIES** Defendants' Motion for Summary Judgment as to Cowan's Count V. **IT IS ALSO ORDERED THAT** the Court **DISMISSES** as moot Cowan's various motions for relief (Doc. Doc. 15, Doc. 16, Doc. 17, Doc. 18, Doc. 25, and Doc. 37.) **IT IS FURTHER ORDERED** that the Clerk of Court is directed to close this case. All hearings and deadlines are **VACATED**.

DATED this 2nd day of September 2026.

Brian Morris, Chief District Judge
United States District Court